Per Curiam.
James Boyd sold 750 acres of land to Richard Myrick for the sum of $1,000, and executed his bond to convey in fee, as soon as the purchase money should be paid, dated the 28th day of February, 1801. Myrick, at the time of the contract, paid one horse, at the price of $60, delivered to him a negi’o girl named Judy, 11 or 12 years old, at the price of $250, which was her full value at that time ; he also gave to Boyd two bonds or for $345 each, one payable the 25th of December, 1802 ; at what time the other was so, does not appear. An absolute bill of sale was given for the negro girl; but Mrs. Myrick appearing unwilling to part with her, Myrick proposed redeeming her by giving another of equal value, or paying $250, on his return from Orleans, to which Boyd assented. Myrick said something might occur to prevent him from obtaining the money at that time. Boyd replied he did not care for the length of time ; the girl was always good for the money. Thereupon, this memorandum was prepared and signed by Boyd: “ This is to certify that the negro Judy, which I purchased of Richard Myrick, I do oblige myself or my heirs to return to said Myrick or his heirs when the said Myrick pays me up the sum of $250. This 28th of February, 1801.” Negro Judy has now two children, Rachael and Harry. Early in the year 1802, and before Myrick’s departure for New Orleans, he settled in some manner with Boyd, for the note *146 due in December following, and took it up. Part of the sum was advanced by John Duke, the father of Mrs. Myrick. Myrick, in that year, died at New Orleans, and John Duke procured letters of •' administration on his estate. The complainants are his children and heirs. The administrator, Duke, not having assets in his hands to discharge the residue of the purchase money, Boyd made a deed to the heirs of Myrick for 363 acres of the land which he had covenanted to convey, and the administrator, with the assent of the widow, delivered up the bond for title to Boyd, who, at the same time, gave up the note he held on Myrick, and both were canceled or destroyed. Duke afterwards paid, in part, the same amount which Myrick had before agreed to pay, and directed the widow to pay the residue, which she did; and procured a deed to himself for 137 acres, and another to his son’ for 250 acres, which, with 363 acres conveyed to the heirs, are 750 acres, the same land originally sold to Myrick. John Duke is now dead, and his executors' are made defendants to 'this suit. The prayer of the bill is a decree to compel the defendant,. Boyd, to convey to the complainants 387 acres, the residue of the land to which they have as yet no title, or pay the value thereof, on the payment of that part of the purchase money which yet remains due, with the interest; and secondly, that he may be decreed to deliver up negro Judy and her two children, and also a reasonable hire for the time he has had her in possession. The defendant, Boyd, insists that he made a full settlement with the administrator, and conveyed 363 acres of land, the full quantity to which the heirs are entitled, not having paid for more. That Judy was delivered in payment and discharge of $250, part of the price of the land, and not as a pledge or mortgage.
In what situation, then, are these heirs placed ? By the death of their ancestor, 750 acres of land descended to them, subject to the payment of the balance of the purchase money. The title bond given by Boyd belonged to them ; the administrator had no right to it. He, as administrator, had nothing to do with the contract, except to pay the residue of the purchase money as far as assets came to his hands for that purpose. Nor can any deeds made to others by Boyd, since the death of Myrick, discharge him from his liability to them, though made with the full consent and approbation of the administrator and widow. They had no right to discharge him from the perform *147 anee, or to authorize the bond to be canceled. What is the law relative to the $250 to be paid for the negro girl ? The bill of sale and explanatory writing is either a mortgage, or purchase with liberty to repurchase. The former is where a debt is due from the mortgagor, which he must pay whether the property mortgaged perish or not. If it perish, the loss is his; the profits in the mean time are also his. The ownership thereof belongs to him; the latter is where no debt is due and the property in the mean time belongs to the vendee. There is no obligation on the vendor to repurchase. The intermediate profits and increase, if any, belong to the vendee ; and this is the case here. Myrick’s debt of $250 was discharged by delivery of the negro to Boyd; she belonged to Boyd till repurchased; Myrick was not bound to repurchase; and if the negro had died in the mean time, the loss would have fallen on Boyd; The increase in the mean time belongs to him, and so does the profits. The liability to repurchase is extended to the representatives of Myrick by the explanatory writing, otherwise it would have ceased with his life. An interlocutory decree, embracing * this matter and others arising in the cause, must be drawn up and presented to the court by the counsel. In drawing it, decree that the defendant Boyd shall convey to the complainants, in fee, all such part of the said 750 acres as hath not been already conveyed to them ; that is to say, 887 acres thereof, over and above the 368 acres heretofore conveyed to said complainants, upon payment by the complainants to such persons as discharged the said last bond for $345, which was executed by said Myrick to said Boyd, and which he, said Boyd, delivered to said Duke, the administrator of the said Myrick, who paid a part thereof himself, and directed the widow of said Myrick to pay the residue thereof, which she did. But in case the said residue, being 387 acres, or any part thereof, hath been conveyed to purchasers for valuable consideration, without notice of Myrick’s equity, that then, and in that case, the said Boyd shall pay to the complainants the value of said lands as the same shall be worth at the time of the final decree in this cause, first allowing for such improvements as the claimants under Boyd shall have made thereon, the complainants being credited on their side with all reasonable allowances for intermediate occupation. And the court orders that this cause shall stand over for further directions, until after the bill shall be amended so as to make parties thereto the claimants of said 387 acres of land, *148 under the said Boyd, and also the • executors or administrators of said Myrick, if the complainants will choose to make any demand upon the personal estate of Myrick for satisfaction of the said moneys, which said complainants are to pay to the said payors of said last mentioned bond.
See, as to equitable conversion, note to Stephenson v. Yandle, 3 Hay. 109, sub fin. As to loss in conditional sales, Scott v. Britton, 2 Yer. 223; Lowry v. McGhee, 8 Yer. 248; Wilson v. Carver, 4 Hay. 90; Hickman v. Cantrell, 9 Yer. 172. See King’s Digest, 2617, 2620, 6598, 11,849.